**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0169n.06

Nos. 10-1748, 10-1753

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 13, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Western |
| | ) | District of Michigan |
| CRAIG M. STONE, (10-1748) | ) | |
| ROBERT D. LARSEN, (10-1753) | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before:       MERRITT, BOGGS, and CLAY, Circuit Judges.

BOGGS, Circuit Judge.  Co-appellants Craig Stone and Robert Larsen were prosecuted in district court, Larsen for tax evasion and both defendants for conspiring to defraud the United States government.  Both were convicted by a jury of all charges.  On this direct appeal, Stone and Larsen raise a single issue: that the district court violated their rights under the Speedy Trial Act.  We affirm the judgment of the district court.

I

In 2004, the Internal Revenue Service received a tip that individuals might be using a potentially fraudulent tax shelter, the Security Trust Insurance Company (STIC), to divert corporate income.  STIC sold loss-of-income insurance, which allowed corporate officers to purchase a policy

that would cover loss of income from a slowdown in business or an act of God. STIC's scheme was to charge an excessively high premium for its policies and, in exchange for a percentage of the premium, make the premium payment available to be "loaned" back to the payor. The company's promotional materials advertised that the premium would be available for loan after one year, if the company had not made any claims on its policy. In actuality, the loan was available immediately after the payment of the premium, and there was no expectation that the loan would be repaid. The money paid for the premium and then returned to the payor would be sheltered from taxation because premiums paid for business insurance are deductible as a cost of doing business. *See* I.R.C §§ 62; 162 (allowing a deduction "all the ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business"); *see also Humana, Inc. v. Comm'r*, 881 F.2d 247, 255–56 (6th Cir. 1989) (defining the test of whether an insurance premium is deductible under § 162 as whether the insurance shifted risk).

A grand jury investigation revealed that STIC was operated by Peter Peggs, Robert Larsen, and Anthony Merlo; Craig Stone was its marketer. On October 3, 2007, the grand jury indicted Peggs, Stone, and Larsen on one count each of conspiracy to defraud the United States. Peggs and Larsen were additionally each charged with two counts of tax evasion.

A superseding indictment was filed on March 6, 2008. This indictment added Merlo and another co-defendant to Count One of the indictment.

Stone and Larsen were each arrested on October 29, 2007, and made their initial appearances before a magistrate judge that day. Both pleaded not guilty.

 On November 8, 2007, co-defendant Peggs filed an unopposed motion for an ends-of-justice continuance, requesting "at least 180 days." On December 4, Stone joined the motion and Larsen joined on December 5. The district court granted the motion on December 12, 2007, to the extent of a 180-day continuance. The court stated that the ends of justice would best be served by granting the continuance, because the complexity of the facts, the volume of discovery materials, and the fact that many witnesses were located outside Michigan meant that defendants needed additional time to review evidence and prepare their defense.

On June 16, 2008, the district court held a status conference with the parties, where defendants orally requested another continuance, though there is no record of how much additional time was requested. In an order filed the same day, the district court granted a continuance for 180 days. The one-page order stated that the ends of justice served by granting the continuance outweighed the best interest of the defendants and the public in a speedy trial.

On November 6, 2008, the district court held another status conference. On the same day, the court issued a case-management order, in which it set the trial date for September 15, 2009. The court did not mention granting any ends-of-justice continuance in this order.

On September 8, 2009, the district court held a pretrial conference. In order for the government to have time to depose a witness, the trial was rescheduled to September 22, 2009.

On September 21, 2009, the day before trial began, Stone and Larsen moved for the district court to dismiss the charges against them, alleging that the court had violated the Speedy Trial Act.

The district court judge addressed the motion on the first day of trial, setting forth detailed findings of fact and conclusions of law as to why it granted the continuances. The court stated that

the complexity of the case justified all three continuances. The court further stated that it had considered the factors in the Speedy Trial Act and determined that the ends of justice would best be served by granting the continuances. It concluded that the only non-excludable days on the 70-day trial clock for Stone and Larsen were the nine non-excludable days that elapsed between their initial appearance before the court and Peggs's motion for continuance on November 8, 2007. The court then issued an order denying the motion.

After a jury trial, Stone, Larsen, and Peggs were convicted of all charges against them—each of one count of conspiracy to defraud the United States and Peggs and Larsen of two counts of tax evasion.

Stone and Larsen now appeal their conviction.[1] Their sole issue on appeal is whether the district court violated their rights under the Speedy Trial Act. Stone and Larsen request that this court reverse their conviction and instruct the district court to dismiss the indictment.

II

The Speedy Trial Act, 18 U.S.C. § 3161–74 (1982), requires that a trial commence within seventy days of the filing date or the date the defendant appeared before a judicial officer of the court, whichever is later. 18 U.S.C. § 3161(c)(1). The Act allows for the tolling of the seventy-day period, however, for "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the

---

[1]Peggs pursued his appeal separately, but his motion to voluntarily dismiss the appeal was granted by this court on July 30, 2010.

Government,"as long as "the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A).

The court is required to consider certain factors in balancing the ends of justice served by granting a continuance and the best interests of the defendant and the public. These factors are:

> (i) Whether the failure to grant such a continuance . . . would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

> . . . .

> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or complex as to fall within clause (ii), would deny the defendant a reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

*Id.* at § 3161(h)(7)(B).

To conduct a proper ends-of-justice analysis when granting a continuance, a district court must state in the record, either orally or in writing, its reasons for determining that granting the continuance outweighs the public's and the defendant's interest in a speedy trial, based on the factors set forth in (h)(7)(B). 18 U.S.C. § 3161 (h)(7)(A). The court does not have to give its reasons contemporaneously with the grant of the continuance; it need only give the reasons no later than the

ruling on the defendant's motion to dismiss on Speedy Trial Act grounds. *United States v. Crawford*, 982 F.2d 199, 204 (6th Cir. 1993).

Stone and Larsen claim that the district court violated the Speedy Trial Act when it failed to start trial by June 5, 2009. They argue that the district court relied on the government's erroneous calculations of excludable days and failed to consider the factors that the Act requires be considered before a judge may grant a continuance.

A district court's interpretation of the Speedy Trial Act is subject to *de novo* review. *See, e.g.*, *United States v. Robinson*, 887 F.2d 651, 656 (6th Cir. 1989). However, whether the district court has properly determined if certain days should be included or excluded from the trial clock is reviewed for an abuse of discretion. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000); *United States v. Tinson*, 23 F.3d 1010, 1012 (6th Cir. 1994). In this case, Stone and Larsen argue that the district court improperly excluded days from the trial clock.

The district court granted three continuances.[2] In the first continuance order, the district court cited 18 U.S.C. § 3161(h)(7)(B)(ii), (iv) and determined that failing to grant the continuance would deny defense counsel the reasonable time necessary for effective preparation in this complex case. The order set forth the court's analysis of the § 3161(h)(7)(B) factors in determining that a

---

[2]Peggs moved for the first continuance on November 8, 2007. The time between November 8 and December 12, the day the continuance was granted, is excludable. The Speedy Trial Act excludes time between the filing of a pre-trial motion and hearing or other prompt disposition. 18 U.S.C. § 3161(h)(1)(D). The Supreme Court recently held that pre-trial motions automatically exclude time, with no regard to whether or not the motion actually caused, or was expected to cause, delay. *See United States v. Tinklenberg*, 131 S. Ct. 2007, 2010–11 (2011) (overruling *United States v. Tinklenberg*, 579 F.3d 589, 598 (6th Cir. 2009)).

continuance was appropriate. Defense counsel's need for additional time to prepare an unusually complex case is an appropriate reason for granting a continuance. Therefore, the first 180-day continuance was properly excluded from the trial clock by the district court.

The second continuance granted by the district court stated that "the ends of justice served by [granting the continuance] outweigh the best interest of the public and the defendants in a speedy trial," citing 18 U.S.C. § 3161(h)(8)(A), (B)(ii), (iv). The district court cited the Act's factors, but it did not set forth its reasoning. However, in response to defendants' motions to dismiss, the court did provide an explanation on the record. The court stated that the defendants had made the oral motion for a continuance, that the prosecutor "wanted to ensure that the defense attorneys ha[d] an adequate opportunity to investigate and prepare," and that the defendants were "all in agreement that [a continuance was] necessary, based on the complexity of the case."

The district court did not abuse its discretion in excluding the days of the second continuance from the trial clock. Granting a continuance based on the complexity of a case is statutorily appropriate and has been established in case law as adequate. *See* § 3161(h)(7)(B)(ii) (allowing for continuances where "the case is so unusual or complex . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the [seventy-day trial clock]").

The third "continuance" granted by the district court was also properly justified at trial as excludable. Though the district court did not designate the order a continuance, but rather a "criminal case management order," and though it did not discuss the § 3161 factors in the order, the court sufficiently described its reasoning in the record in response to defendants' motion to dismiss. The court stated:

> [O]n November 5, 2008, . . . defense counsel advised that they could not realistically be prepared for trial any earlier than fall 2009, given the rolling discovery they were receiving from the government. Counsel for defendant Peggs indicated that a 'firm' trial date in the fall of 2009 would be 'ideal.' On November 6, 2008, being uniquely situated, this Court determined to continue the case further based on the ends of justice and scheduled trial for September 15, 2009.

The district court stated that the defendants consented to this delay. *See id.* at 8 ("Defendants Larsen and Stone . . . acknowledged that they had also consented to delays in their case [up to the one-week continuance granted September 22, 2009]."). The court discussed the § 3161(h)(7)(B) factors, noted that a court must base continuances on these factors, and stated that the court was required to set forth its reasoning in the record. The court then held:

> All the time between December 12, 2007 and today, September 22, 2009, is excludable under the ends of justice exception. . . . As this Court recognized in the very first continuance granted to defendants, it has relied upon 18 U.S.C. 3161(h)(7)(B)(ii), and [(B)(iv)] which provides the following: [provides the relevant (h)(8)(B) factors]. This case is not the norm. The factual predicate for a statutorily authorized exclusion of delay is clearly established. As defense counsel has emphasized from the beginning of this case, the nature of the evidence against their clients is complex, far-reaching, and immense. . . . [T]here is an estimate somewhere that the number of documents disclosed by the government for review by defense counsel is 638,000. This Court has heard over and over from defense counsel a litany of the complexities of the case, the voluminousness of the documents, the burdens on the sole practitioner defense attorneys . . . , the extensive travel . . . that was necessitated, all adding up to the request for and need for delay. . . . [D]efense counsel described the management and analysis of the hundreds of thousands of documents as "daunting," and the preparation for witness examination as "challenging." . . . In granting the requested delays in this case, this Court found and reiterates here today that it was unreasonable to expect adequate preparation for pretrial proceedings or for this trial itself within the time limits established by this section of the statute. The complexity of the case and defense counsel's repeated requests for additional time to prepare motivated this Court's decision to grant continuances and delay trial until today. The ends of justice served by continuing trial until today clearly outweighed their interests and the public's interest in a speedy trial.

*Id.* at 13.

The district court's detailed explanation of its reasoning demonstrates that its designation of the delay from November 6, 2008 to September 15, 2009 as a properly excludable ends-of-justice continuance was not an abuse of discretion. The court's use of the past tense in its explanation highlights that it describes the motivation that existed at the time the delay was imposed. The court discussed the § 3161(h)(7)(B)(ii) and (iv) factors, which were adequate reasons for its decision to grant the continuance. That defense counsel may not have requested a continuance is not fatal. *See* § 3161(h)(7)(A) (describing a continuance as being "granted by any judge on his own motion *or* at the request of the defendant or his counsel *or* at the request of the attorney for the Government") (emphasis added). The fact that the continuance was not designated as such, but rather took the form of setting the trial date in a case-management order, is also not fatal. An ends-of-justice continuance can be found even when a delay is not designated as such by the court. *United States v. Spring*, 80 F.3d 1450, 1457 (10th Cir. 1996). The effect of the district court's case-management order was to grant a continuance, and that continuance was properly justified by the court's reasoning in response to defendants' motion to dismiss. Therefore, the district court did not abuse its discretion when it held that the roughly ten months of delay caused by the case-management order was an excludable continuance under the Speedy Trial Act.

The district court granted a fourth continuance on September 15, 2009, giving the prosecution one week to depose a witness who lived in London. The district court stated that it had determined

that the ends of justice were best served by granting the one-week continuance. The district court did not abuse its discretion when it held that this continuance was excludable.

In summary, the only non-excludable days that elapsed before Stone and Larsen's trial began on September 22, 2009 were the days between their appearance on October 29, 2007 and co-defendant Peggs's motion for a continuance on November 8, 2007. The remainder of the time before trial was covered by the 180-day continuance granted December 12, 2007; the 180-day continuance granted June 16, 2008; the ten-month continuance granted via the court's case-management order of November 6, 2008; and the one-week continuance granted on September 15, 2009. The district court did not abuse its discretion in holding that these continuances were excludable from the trial clock.

## III

For the foregoing reasons, the district court's denial of defendants' motion to dismiss the indictment against them is AFFIRMED. Correspondingly, defendants' request that their convictions be reversed is also DENIED.