**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Amos PATTON, Defendant–Appellant.**

No. 15–5623

United States Court of Appeals,
Sixth Circuit.

FILED June 07, 2016

---

Frederick H. Godwin, Assistant U.S. Attorney, Mark A. Erskine, Assistant U.S. Attorney, Office of the U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Kevin Michael Schad, Attorney, Federal Public Defender's Office, Cincinnati, OH, for Defendant–Appellant.

BEFORE: KEITH, COOK, and STRANCH, Circuit Judges.

COOK, Circuit Judge.

Angry with his superior officers for demoting him, Amos Patton retrieved a gun from his car and opened fire at officers at the Tennessee National Guard Armory. In this appeal, he challenges the federal government's jurisdiction to prosecute him, claiming that the offense did not occur within the territorial jurisdiction of the United States. He also asserts a Speedy–Trial–Act violation and challenges the district court's restitution order. We affirm.

## I.

In 2013, Patton, then a Tennessee National Guard recruiter, met with his superior officers at the National Guard Armory in Millington, Tennessee. At the meeting, Patton's superior officers reduced his rank, relieved him of full-time employment, and afforded him an opportunity to voluntarily resign. Patton refused. He went to his car, reentered the Armory with a 9mm semi-automatic pistol and opened fire on the officers there. He ran out of ammunition after wounding three officers. He was taken into custody after being subdued in the parking lot.

A federal grand jury charged Patton with four counts of assault with intent to commit murder within the territorial jurisdiction of the United States, 18 U.S.C. § 113(a)(1), four counts of assault with a dangerous weapon with intent to do bodily harm within the territorial jurisdiction of the United States, *id.* § 113(a)(3), and one count of carrying and using a firearm during a federal crime of violence, *id.* § 924(c). A jury convicted Patton on all nine counts. He now appeals.

## II.

Patton argues that the court lacked subject-matter jurisdiction over his prosecution because the shootings occurred in territory under Tennessee's exclusive jurisdiction, not "the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 113(a)(1), (3). The territorial jurisdiction of the United States includes "lands reserved or acquired for the use of the United States, and under the exclusive *or concurrent* jurisdiction thereof." 18 U.S.C. § 7(3) (emphasis added). "[W]hether a crime is committed within the 'special maritime and territorial jurisdiction of the United States' is a question of subject-matter jurisdiction." *United States v. Detcher,* 480 Fed.Appx. 360, 361 (6th Cir. 2012) (citing *United States v. Gabrion,* 517 F.3d 839, 845 n. 5 (6th Cir. 2008)).

The parties disagree on the standard of review. The government deems this a sufficiency-of-the-evidence challenge subject to deferential review because the jury found territorial jurisdiction—an element of each offense—beyond a reasonable doubt. *See*

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Patton maintains that subject-matter jurisdiction always receives de novo review. *See Gabrion*, 517 F.3d at 872 (Moore, J., concurring). We need not determine which standard applies because Patton's claims fail under either standard.

The United States had exclusive jurisdiction over the land on which the Armory stands until 1998. The United States then signed a retrocession agreement returning parts of the Naval Support Activity to Tennessee while establishing concurrent jurisdiction over the returned land. The Armory fell within the agreement's purview.

■ Patton selectively cites the retrocession agreement to prove that the United States relinquished all interest in the Armory. He quotes language transferring ownership of the land to Tennessee, as well as language noting that "cession of jurisdiction is hereby accepted by the United States." But he ignores two key facts: the parties (1) titled the retrocession contract a "memorandum of agreement by and between the United States of America and the State of Tennessee for *concurrent jurisdiction*" and (2) agreed that "all the land as shown and described [in the agreement shall] *be subject to the concurrent jurisdiction* of both the United States and the State of Tennessee." Because the record is clear that the federal government exercised concurrent jurisdiction with Tennessee over the Armory, the district court had subject-matter jurisdiction over Patton's prosecution.

## III.

Patton challenges his conviction under the Speedy Trial Act and identifies 87 non-

excludable days between his arraignment and the beginning of trial.

The Speedy Trial Act generally requires a criminal defendant's trial to commence "within seventy days" of arraignment. 18 U.S.C. § 3161(c)(1). The Act excludes delays caused by certain events, including judge-granted continuances where the judge finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). We review ends-of-justice continuances for abuse of discretion and will not reverse absent a showing of prejudice. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000); *United States v. Cianciola*, 920 F.2d 1295, 1298 (6th Cir. 1990).

The parties agree that 30 non-excludable days passed before September 3, 2014, but Patton argues that 57 additional non-excludable days passed thereafter. Here is how he arrives at that count. On September 3, the court denied the government's motion to exclude Patton's expert testimony regarding Patton's suicidal ideation just before the shooting. The court anticipated that denying exclusion would lead the government to request its own mental evaluation of Patton, which "may delay the case ultimately getting to trial." To facilitate that evaluation, the court set "a status/report date" of November 10.

Patton moved to dismiss the indictment under the Speedy Trial Act, arguing that the district court entered no ends-of-justice findings at the September hearing. This omission, Patton argued, kept the speedy-trial clock running and that 57 days[1] between that hearing and the November 10 status conference should count

1. Patton concedes that the court properly excluded September 11–19 and October 8–10 from the speedy-trial calculation.

toward exceeding the speedy-trial allotment. If Patton were correct, 87 non-excludable days would have passed between his arraignment and trial.

The district court denied Patton's motion. Although it conceded that it made no ends-of-justice findings at the September hearing, the court ruled that its on-the-record findings in September—that the government needed time for a mental evaluation—supported an ends-of-justice continuance. It then entered these findings on the record before denying Patton's motion to dismiss.

■ Patton argues that the court could not, in effect, back-date the required findings. But the law is otherwise: a district court must place ends-of-justice findings on the record "by the time [it] rules on a defendant's motion to dismiss." *Zedner v. United States*, 547 U.S. 489, 507, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006); *see also United States v. Richardson*, 681 F.3d 736, 739 (6th Cir. 2012) ("The court does not have to give its reasons contemporaneously with the grant of the continuance; it need only give the reasons no later than the ruling on the defendant's motion to dismiss on Speedy Trial Act grounds." (quoting *United States v. Stone*, 461 Fed. Appx. 461, 464 (6th Cir. 2012))); *Zedner*, 547 U.S. at 507 n. 7, 126 S.Ct. 1976 (observing that "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance"). And so long as the court "base[d] its continuance on 'permissible factors' under the [Speedy Trial] Act," and did not "invent after-the-fact findings to justify an ends-of-justice continuance that 'cannot fairly be said,' upon review of the record, to have served as its basis for granting the continuance," its action was proper. *United States v. Brown*, 819 F.3d 800, 814 (6th Cir. 2016) (quoting *United States v. Richmond*, 735 F.2d 208,

215–16 (6th Cir. 1984)). Here, the district court clearly articulated its grounds for granting the continuance at the September hearing: to afford the government time to obtain a mental evaluation of Patton, a justification the Act allows. *See* 18 U.S.C. § 3161(h)(7)(B)(iv) (allowing continuances for "effective preparation" by the government). Phony, post-hoc justifications played no role—the speedy-trial findings at the February hearing matched the reasons given at the time of the continuance. The Speedy Trial Act provides no basis to reverse the district court.

## IV.

Patton also challenges the $6,640.50 restitution award, and we review that award's lawfulness de novo. *United States v. Johnson*, 440 F.3d 832, 849 (6th Cir. 2006) (quoting *United States v. Wood*, 364 F.3d 704, 714 (6th Cir. 2004)). He maintains that the award—premised on wages lost by the shooting-victims' spouses while "provid[ing] care" to the victims—falls outside the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A. Specifically, he insists that spouses are not "victims" under the MVRA.

■ The MVRA mandates restitution to "victims," defined as "person[s] directly and proximately harmed as a result of the commission" of the offense. 18 U.S.C. § 3663A(a)(2). When an offense covered by the MVRA results "in bodily injury to a victim," a defendant must "reimburse *the victim* for income lost by *such victim*." 18 U.S.C. § 3663A(b)(2)(C) (emphasis added). Plainly, the statute covers lost wages for the person who suffered bodily injury. But as two other circuits have held, the statute forecloses lost-wages reimbursement for family members who suffered no bodily injury. *See United States v. Wilcox*, 487 F.3d 1163, 1176 (8th Cir. 2007); In *Wilcox*, the court vacated an order reimbursing the

victim's mother for lost wages, reasoning that the subsection concerning reimbursement for lost wages refers to a specific victim: "[I]n the case of an offense resulting in bodily injury *to a victim* . . . [the defendant shall] reimburse *the* victim for income lost *by such victim* as result of such offense." *See id.* (alternation in original) (quoting 18 U.S.C. § 3663A(b)(2)(C)). The statute's "use of the definite article indicates that '*the* victim' who may be reimbursed is . . . the victim who suffered bodily injury." *Id.* This court has previously suggested it finds the reasoning in *Wilcox* persuasive. *See United States v. Evers*, 669 F.3d 645, 656 n. 3 (6th Cir. 2012) (citing *Wilcox* and noting that the parent of a child-sex-abuse victim might not recover lost wages if the MVRA, as opposed to a special sex-abuse restitution statute, applied). Because the victims' spouses suffered no bodily injury, the district court erred in awarding them lost wages under the MVRA. *See Wilcox*, 487 F.3d at 1176.

Under the MVRA, defendants may also be required to "pay an amount equal to the cost of necessary medical and related professional services" for the victim suffering bodily injury. 18 U.S.C. § 3663A(b)(2)(A). The presentence investigation report, which the district court adopted in ordering restitution at sentencing, characterized part of a victim's loss as including "expenses from doctors' appointments and surgery follow-up," but did not differentiate between medical expenses and the non-reimbursable spousal lost wages in describing restitution. And at sentencing, the district court never clarified what portion of its award compensated for medical expenses versus lost wages for the victims' spouses. Accordingly, the record leaves us unable to determine what amount of restitution, if any, was properly awarded under the MVRA as recoverable medical expenses. We accordingly vacate the restitution award and remand for the further

proceedings limited to restitution. On remand, the district court may order restitution for medical expenses if supported by the record, but may not award spousal lost wages under the MVRA.

## V.

We AFFIRM Patton's conviction, VACATE the restitution order and REMAND for further proceedings limited to the restitution award.