**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bernadette H. SABLAN, Defendant–Appellant.**

No. 94–10533.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1995.

Decided Aug. 7, 1996.

David K. Link, Hogan & Link, Agana, Guam, for defendant-appellant.

Mark E. Kondas, Assistant United States Attorney, Agana, Guam; Stevan D. Mitchell, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before HUG, Chief Judge, THOMPSON and O'SCANNLAIN, Circuit Judges.

HUG, Chief Judge:

Bernadette H. Sablan appeals her conviction for computer fraud under 18 U.S.C. § 1030(a)(5) 1988, *amended by* Pub.L. No. 103–322, § 290001(b), 108 Stat.2097–2099 (Sept. 13, 1994), following a conditional guilty plea. Sablan argues that the district court wrongly interpreted the elements of the crime and, alternatively, that the statute is unconstitutional. Sablan also challenges the district court's calculation of the loss attributable to her conduct, the court's decision not to depart downward, and the restitution order. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3576. We affirm Sablan's conviction and her sentence. However, we reverse and remand for a recalculation of the restitution award.

## FACTS

In the early hours of August 15, 1992, Sablan, a former employee of the Bank of Hawaii's Agana, Guam branch, left a bar where she had been drinking with a friend. Sablan had recently been fired from the bank for circumventing security procedures in retrieving files. That morning, Sablan left the bar and entered the closed bank through an unlocked loading dock door. She went to her former work site (using a key she had kept) and used an old password to log into the bank's mainframe. Sablan contends that she then called up several computer files and logged off. The Government asserts that Sablan changed several of the files and deleted others. Under either version, Sablan's conduct severely damaged several bank files.

Sablan was charged with computer fraud in violation of 18 U.S.C. § 1030(a)(5) (the "computer fraud statute"). In a pretrial motion to dismiss, Sablan attacked the statute for its failure to require a *mens rea* for each of the essential elements of the offense. In the alternative, Sablan requested a jury instruction that required the Government to prove intent as to all elements of the crime. In particular, Sablan wanted the jury to be instructed that the Government needed to prove that she had the intent to damage bank files. The district court denied the motion and ruled that, as used in the computer fraud statute, the word "intentionally" applied only to the access element of the crime. Sablan then entered into a conditional plea agreement that preserved her right to appellate review of the issue raised in her motion.

The district court calculated Sablan's sentence under Sentencing Guideline § 2F1.1(a), and enhanced her sentence due to the amount of damage caused by Sablan's conduct. The calculation included the cost of numerous hours of computer programming to restore the damaged files. Sablan asserts that the district court improperly calculated the amount of damage due to her actions and that the improper calculation led to (1) an improperly enhanced sentence, (2) a refusal to depart downward, and (3) an improper restitution order.

## DISCUSSION

### I.

### THE COMPUTER FRAUD STATUTE

Sablan contends on appeal that the computer fraud statute must have a *mens rea* requirement for all elements of the crime. She asserts that the indictment was defective because it did not allege the appropriate *mens rea* required by the statute. In the alternative, Sablan asserts that a jury instruction was required to inform the jurors that the state had to prove intent for every element of the crime.

█ Sablan was convicted under the version of the computer fraud statute in effect from 1986 to 1994. That statute stated:

(a) Whoever-

. . .

(5) intentionally accesses a Federal interest computer without authorization, and by means of one or more instances of such conduct alters, damages, or destroys information in any such Federal interest computer . . . and thereby-

(A) causes loss to one or more others of a value aggregating $1,000 or more during any one year period;

. . .

shall be punished as provided. . . .

18 U.S.C. § 1030 (amended by Pub.L. No. 103-354). In order to have violated the statute, a defendant must have (1) accessed (2) a federal interest computer (3) without authorization and (4) have altered, damaged, or destroyed information (5) resulting in the loss to one or more others (6) of at least one thousand dollars. The district court held that the statute's *mens rea* requirement, "intentionally," applied only to the access element of the crime. We review questions of statutory interpretation *de novo*. *United States v. Valencia-Roldan*, 893 F.2d 1080, 1082 (9th Cir.), *cert. denied*, 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990).

### A.

█ We begin our analysis by noting that the statute is ambiguous as to its *mens rea* requirement. Although the statute explains that one must "intentionally access[ ] a Federal interest computer without authorization, and . . . destroy[ ] information in any such Federal interest computer," punctuation sets the "accesses" phrase off from the subsequent "damages" phrase. With some statutes punctuation has been used to indicate that a phrase set off by commas is independent of the language that followed. *E.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). However, punctuation is not always decisive in construing statutes. *See Costanzo v. Tillinghast*, 287 U.S. 341, 53 S.Ct. 152, 77 L.Ed. 350 (1932). In *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), and *United States v. X-Citement Video*, — U.S. —,

115 S.Ct. 464, 130 L.Ed.2d 372 (1994), for example, the Supreme Court applied the mental state adjacent to initial words to later clauses without regard to intervening punctuation. In both cases, the Supreme Court resorted to legislative history to clarify the ambiguous language.

We conclude that the comma after "authorization" does not resolve the ambiguity. Allowing the *mens rea* requirement to reach subsequent elements of the crime would comport with general linguistic rules. Similarly, it is proper to read the statute without extending "intentionally" to the other clauses of the sentence. Therefore, we look to the statute's legislative history to clear up the textual ambiguity. *See X–Citement Video,* —— U.S. at ——, 115 S.Ct. at 469.

In *United States v. Morris,* 928 F.2d 504 (2d Cir.), *cert. denied,* 502 U.S. 817, 112 S.Ct. 72, 116 L.Ed.2d 46 (1991), the Second Circuit examined the legislative history of the computer fraud statute and concluded that the "intentionally" standard applied only to the "accesses" element of the crime. *Id.* at 509. The court focused on the fact that original version of the statute, passed in 1984, punished anyone who

> *knowingly* accesses a computer without authorization, or having accessed a computer with authorization, uses the opportunity such access provides for purposes to which such authorization does not extend, and by means of such conduct *knowingly* uses, modifies, destroys, or discloses information in, or prevents authorized use of, such computer, if such computer is operated for or on behalf of the Government of United States and such conduct affects such operation.

Pub.L. No. 98–473, subsection (a)(3) (amended latest by Pub.L. No. 103–354) (emphasis added). When the statute was amended in 1986, the scienter requirement was changed from knowingly to intentionally[1] and the second *mens rea* reference was eliminated. By contrast, other subsections of section 1030 retained the "dual-intent" language by plac-

ing the *mens rea* requirement at the beginning of both the "accesses" phrase and the "damages" phrase. *See, e.g.,* 18 U.S.C. § 1030(a)(1). The court concluded that the decision of Congress not to repeat the scienter requirement within this statute evidenced an intent not to require the Government to prove a defendant's intent to cause damage. *Morris,* 928 F.2d at 509.

Sablan urges this court to reject the holding in *Morris,* contending that the 1986 bill was intended only to apply to those who intentionally damage computer data. She points to one line in a Senate report that evidenced a desire to retain the dual intent language: "The new subsection 1030(a)(5) to be created by the bill is designed to penalize those who intentionally alter, damage, or destroy certain computerized data belonging to another." 1986 U.S.C.C.A.N. at 2488. Thus, Sablan argues, the computer fraud statute has a *mens rea* requirement for the damages clause of the bill. We disagree.

As the *Morris* court concluded:

> Despite some isolated language in the legislative history that arguably suggests a scienter component for the "damages" phrase of section 1030(a)(5)(A), the wording, structure, and purpose of the subsection, examined in comparison with its departure from the format of its predecessor provision persuade us that the "intentionally" standard applies only to the "accesses" phrase of section 1030(a)(5)(A), and not to its "damages" phrase.

*Morris,* 928 F.2d at 509. We adopt the reasoning of the *Morris* court and hold that the computer fraud statute does not require the Government to prove that the defendant intentionally damaged computer files.

**B.**

 Sablan contends that if the computer fraud statute does not have a *mens rea* requirement for the damages element of the offense, the statute is unconstitutional. Relying on the Supreme Court's decision in *X–Citement Video,* —— U.S. at ——, 115 S.Ct.

---

1. "The substitution of an 'intentional' standard [wa]s designed to focus Federal criminal prosecutions on those whose conduct evinces a clear intent to enter, without proper authorization, computer files or data belonging to another." S.Rep. No. 99–432, 99th Cong., 2d Sess. 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2479, 2484.

at 464, Sablan states that a *mens rea* must be applied to all elements of an offense or due process standards are violated. We review *de novo* the district court's determination of federal constitutional law. *United States v. Cook*, 859 F.2d 777, 778 (9th Cir. 1988).

The Supreme Court has never ruled that *mens rea* is a constitutional requirement. However, in *X–Citement Video*, the Supreme Court stated that a statute without any scienter requirements "would raise serious constitutional doubts." *X–Citement Video*, —— U.S. at ——, 115 S.Ct. at 472. Sablan contends that lack of a scienter requirement for the damages element of the offense renders the statute constitutionally infirm. In *X–Citement Video*, the Court construed the "knowingly" scienter requirement beyond the most proximate clause of 18 U.S.C. § 2252 to clarify that one charged with trafficking in child pornography must know that the material involves the use of a minor. *Id.* at 472.

After reviewing the cases interpreting criminal statutes to include broadly applicable scienter requirements the Court held that the "presumption in favor of a scienter requirement should apply to each of the statutory elements which criminalize otherwise innocent conduct." *X–Citement Video*, —— U.S. at ——, 115 S.Ct. at 469. However, the computer fraud statute does not criminalize otherwise innocent conduct. Under the statute, the Government must prove that the defendant intentionally accessed a federal interest computer without authorization. Thus, Sablan must have had a wrongful intent in accessing the computer in order to be convicted under the statute. This case does not present the prospect of a defendant being convicted without any wrongful intent as was the situation in *X–Citement Video*. Therefore, we hold that the computer fraud statute's *mens rea* requirement is sufficient to meet constitutional standards.

## II.

## SABLAN'S SENTENCE

■ Sablan asserts that the district court erred in three ways in sentencing her: (1) incorrectly applying the Sentencing Guidelines in calculating the amount of loss sustained by the victim, (2) failing to depart downward at sentencing, and (3) ordering restitution. We review the district court's interpretation of the Sentencing Guidelines *de novo*. *United States v. Felix*, 87 F.3d 1057, 1058–59 (9th Cir.1996); *United States v. Ginn*, 87 F.3d 367, 370–71 (9th Cir.1996). The district court's factual determinations supporting a sentence are reviewed for clear error. *United States v. Mainard*, 5 F.3d 404, 405 (9th Cir.1993).

### A.

■ At sentencing, the principal issue in dispute was the amount of loss sustained by the Bank of Hawaii as a result of Sablan's conduct. Sentencing Guideline § 2F1.1(a), which applies to fraud and related activities in connection with computers, provides for a base offense level of 6. The base offense level is subject to enhancement depending upon the extent of the loss incurred. U.S.S.G. § 2F1.1(b). In calculating the loss, the district court included the cost of repairs and other activities necessary to restore the bank's files to their original condition. These costs included $13,377.38 in programming and $14,875 in associated expenses, for a total of $28,282.38.

The court applied U.S.S.G. § 2F1.1(b)(1), which provides that when the loss exceeds $20,000 the offense level is to be increased by four levels. Application Note 8 states that for this purpose, "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." Application Note 7, dealing with the valuation of the loss, refers to the Commentary for U.S.S.G. § 2B1.1 dealing with valuation of loss in theft cases. Application Note 2 to that section is pertinent with respect to the damage loss in this case. It states in part, "[w]hen property is damaged, the loss is the cost of repairs, not to exceed the loss had the property been destroyed."

The district court calculated the cost of repairs based upon the bank's standard hourly rate for its employees' time, computer time, and administrative overhead-the same

rate that the bank uses in charging paying customers. Sablan complains that this was improper because of the profit margin and administrative overhead that is built into these charges. However, had the bank hired an outside contractor to make the repairs these factors would have been built into the charges. Similarly, had it not been necessary for the bank to devote its employees' time and computer time to making these repairs, the administrative overhead and profit would have been paid to the bank by its normal customers. The utilization of the normal bank charges in valuation of the loss was a reasonable approach by the district court.

Sablan also objects to the inclusion in the calculation of $4,000, which reflect the value of a meeting of bank managers with the FBI, $1,000 for a staff meeting to discuss the incident, and $350 for the handling of crank calls during the repair time. These expenses, while probably foreseeable, were not required to repair the damage. Thus, they were consequential losses. There is some uncertainty in the case law as to whether and under what circumstances consequential damages may be considered in valuing loss under the Sentencing Guidelines. *Compare United States v. King,* 915 F.2d 269, 272 (6th Cir.1990) (holding that foreseeable consequential damages are to be considered in valuing loss) *with United States v. Wilson,* 993 F.2d 214, 217 (11th Cir.1993) (holding that consequential damages are not to be considered). However, we need not consider this matter in this case because even deducting the $5,350 in consequential damages from the $28,252.38 calculated by the district court, the remaining balance exceeds the $20,000 specified for the four-level enhancement.

### B.

■ Sablan asserts that the district court should have departed downward in her sentence because (1) the damage figure overstates the seriousness of the offense and (2) this was a single incident. We affirm the district court's refusal to depart downwards on jurisdictional grounds. A district court's refusal to depart from the Sentencing Guidelines is not reviewable on appeal. *United States v. Eaton,* 31 F.3d 789, 792 (9th Cir. 1994); *United States v. Morales,* 972 F.2d 1007, 1011 (9th Cir.1992), *cert. denied,* 507 U.S. 1012, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993). In the present case, the district court recognized that it could depart downwards and chose not to. That decision is not reviewable by this court.

### C.

■ Sablan challenges the amount of restitution ordered by the district court. Restitution in criminal cases is authorized by the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. §§ 3663–3664. The amount of restitution ordered is reviewed for abuse of discretion. *United States v. Catherine,* 55 F.3d 1462, 1465 (9th Cir.1995). However, restitution can only include losses directly resulting from a defendant's offense. *United States v. Koenig,* 952 F.2d 267, 275 (9th Cir.1991). Sablan challenges the restitution order because it includes consequential damages and because it does not consider her ability to pay.

■ As discussed above, the $28,252.38 loss valuation contains consequential damages of $5,350. We have held that a restitution order must be based on losses directly resulting from the defendant's criminal conduct. *United States v. Barany,* 884 F.2d 1255, 1261 (9th Cir.1989), *cert. denied,* 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990). The consequential expenses incurred due to the meetings with the FBI, the staff meeting, and the handling of the crank calls were not expenses necessary to repair the files damaged by Sablan's criminal conduct. These expenses were thus not properly included in the restitution order. On remand, the sum of $5,350 should be excluded from the restitution order, resulting in a restitution order of $22,902.38.

■ We reject Sablan's contention that no order of restitution is proper because she is unable to pay. In issuing an order of restitution, a district court must consider (1) the amount of loss sustained by the victim, (2) the financial resources of the defendant, and (3) the financial needs and earnings of

the defendant and the defendant's dependents. 18 U.S.C. § 3664(a). Although the district court is not required to make findings of fact regarding the defendant's financial condition, *United States v. Cannizzaro,* 871 F.2d 809, 810–11 (9th Cir.), *cert. denied,* 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989), the record must reflect that the district court had at its disposal information relating to the defendant's financial position. *Id.* at 811. In the present case, the presentencing report contains information relating to Sablan's financial condition. The report concludes that Sablan has a negative net worth of $8,587.83 and a negative monthly cash flow of $187.28. Nonetheless, the court ordered Sablan to pay restitution to the bank.

■ Although Sablan is indigent at the present time, we hold that an order of restitution was proper. A defendant's present indigence is not sufficient to preclude a restitution order. *United States v. Smith,* 944 F.2d 618, 623 (9th Cir.1991), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992). "Imposing restitution on indigent persons is deemed appropriate in the Ninth Circuit because the defendant's future financial status is indeterminable and could change." *United States v. Jackson,* 982 F.2d 1279, 1284 (9th Cir.1992). The district court found that Sablan had the capability of providing restitution. The court noted that she "is a trained person, she has an education, and she has, therefore, skills that can still be used on the job market." Because Sablan has a computer science degree, the court determined that she would have the ability to pay a restitution order. That finding is not an abuse of discretion.

We therefore AFFIRM Sablan's conviction under 18 U.S.C. § 1030(a) and her sentence. We REVERSE AND REMAND the restitution order for recalculation consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**