**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA
*Plaintiff-Appellee,*

v.

MICHAEL J. ANDREWS,
*Defendant-Appellant.*

No. 09-30072

D.C. No.
2:07-CR-00135-
EFS-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
November 2, 2009—Seattle, Washington

Filed April 7, 2010

Before: Arthur L. Alarcón, Ferdinand F. Fernandez and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Alarcón;[1]
Concurrence by Judge Clifton
Dissent by Judge Alarcón

---

[1]This opinion serves as the opinion of the majority of the court on the issues of overcompensation or double-dipping as a result of payment to the Crime Victims' Compensation Program (CVCP) and expert testimony regarding the proximate cause of the victim's injuries. Judge Clifton's concurring opinion expresses the majority view on the payment of restitution to the CVCP, from which Judge Alarcón dissents.

## COUNSEL

Matthew Campbell, Federal Defenders of Eastern Washington
& Idaho, Spokane, Washington, for the defendant-appellant.

Matthew F. Duggan, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

## OPINION

ALARCÓN, Senior Circuit Judge:

Michael J. Andrews appeals from a restitution order imposed pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, following his guilty plea to an assault resulting in serious bodily injury to Scott Bershaw in violation of 18 U.S.C. §§ 1151, 1153(a), 113(a)(6), (b)(2), and 1365(h)(3).[2] Andrews contends the district court erred in ordering him to pay restitution for lost wages to the Crime Victim's Compensation Program (CVCP), Wash. Rev. Code

---

[2] 18 U.S.C. § 113(a)(6) and (b)(2), provides as follows:

(a)  Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

(6) Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more than ten years, or both.

. . . .

(b)  As used in this subsection—

(2) the term "serious bodily injury" has the meaning given that term in section 1365 of this title.

18 U.S.C. § 1365 provides:

(h) As used in this section—

(3) the term "serious bodily injury" means bodily injury which involves—

(A) a substantial risk of death;

(B) extreme physical pain;

(C) protracted and obvious disfigurement; or

(D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty; and . . .

§ 7.68, in determining that payment to CVCP does not constitute overcompensation or double-dipping, and in refusing to allow an expert witness to testify regarding the proximate cause of the victim's injuries. We remand for a renewed restitution proceeding because the district court abused its discretion in precluding Andrews's expert witness from testifying regarding the proximate cause of Bershaw's injuries.

# I

On October 2, 2007, a federal grand jury returned a one count indictment charging Andrews with assault resulting in serious bodily injury.[3] On September 4, 2008, Andrews pled guilty to the one count indictment.

On January 14, 2009, Andrews was sentenced to imprisonment for 28 months. In the plea agreement, Andrews agreed to an order of restitution in an amount to be determined prior to the sentencing proceedings. At the sentencing hearing, however, Andrews requested the district court to bifurcate the sentencing and restitution hearing because he disputed the amount of restitution recommended in the pre-sentence report. The district court granted Andrews' request.

At the restitution hearing, the district court ordered that Andrews pay $59,284.41 directly to CVCP for Bershaw's medical bills and his injury-related loss of income. Pursuant to 18 U.S.C. § 3663A(b)(2), the district court stated "that the CVCP is entitled to be reimbursed for both medical bills and compensable losses because Mr. Bershaw experienced actual losses, and the CVCP helped him cover those losses. Reimbursing the CVCP directly avoids the unnecessary procedural hurdle of reimbursing Mr. Bershaw, only to have the CVCP then seek reimbursement from Mr. Bershaw."

---

[3]The district court had subject matter jurisdiction of this matter pursuant to 18 U.S.C. § 1153(a) because Andrews is an enrolled member in the Spokane Tribe of Indians and committed a crime within Indian country as defined by 18 U.S.C. § 1151.

## II

Andrews contends that the district court's restitution order overcompensated Bershaw because he "received payment from both [CVCP] and the Social Security Administration (SSA) for the same period of disability." (Appellant Br. 19). He asserts "[t]his payment violated Section 3664(j)(2), which requires that '[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim." *Id.* The district court, however, determined that payment by CVCP was for "loss of function," while payment by the SSA was because "Bershaw was permanently, totally disabled." Thus, the district court stated, "[t]hese are separate disability distinctions entitled to separate disability awards."

**[1]** Because there is evidence in the record supporting the district court's findings that the disability awards from CVCP and SSA constituted two different types of compensation, the district court did not commit clear error in determining that no overcompensation or double-dipping occurred.

## III

Andrews further maintains that the district court erred in not allowing him to present an expert witness at the restitution proceeding "in an effort to demonstrate that his actions were not the proximate cause of Mr. Bershaw's disability." (Appellant Br. 23). He argues that he "explained [to the district court] that Dr. Mays was being called to testify regarding 'whether [ ] Bershaw's cognitive disorder is attributed to the head injury or are there possible—other possible reasons for the cognitive disorder." *Id.*

**[2]** "[R]estitution can only include losses directly resulting from a defendant's offense." *Stoddard,* 150 F.3d at 1147 (quoting *United States v. Sablan,* 92 F.3d 865, 870 (9th Cir. 1996)). "For that reason, 'a restitution order must be based on

losses directly resulting from the defendant's criminal conduct.' " *Id.*

[3] "A victim for restitution purposes is a person who has suffered a loss caused by the specific conduct that is the basis of the offense of conviction." *United States v. Gamma Tech Indus., Inc.,* 265 F.3d 917, 927 (9th Cir. 2001) (quoting *Hughey,* 495 U.S. at 413) (footnote omitted). In *Gamma Tech* this court stated:

> It is clear from our cases that the phrase "directly resulting" means that the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution, but the loss cannot be too far removed from that conduct. . . . Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. . . . The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable.

*Gamma Tech,* 265 F.3d at 928 (citations omitted). "[T]he main inquiry for causation in restitution cases [is] whether there was an intervening cause and, if so, whether this intervening cause was directly related to the offense conduct." *Gordon,* 393 F.3d at 1055 (quoting *United States v. Meksian,* 170 F.3d 1260, 1263 (9th Cir. 1999)).

"Under 18 U.S.C. § 3664 ('§3664'), a dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence." *United States v. Waknine,* 543 F.3d 546, 556 (9th Cir. 2008) (citing 18 U.S.C. § 3664(e) and *United States v. Clayton,* 108 F.3d 1114, 1118 (9th Cir. 1997)). "The government bears the burden of proving that a person or entity is a victim for purposes of restitution, [*United States v. ]Baker,* 25 F.3d [1452,] 1455 [(9th Cir. 1994) overruled on other grounds by *United States v. Law-*

*rence,* 189 F.3d 838, 846 (9th Cir. 1999)], and of proving the amount of the loss, 18 U.S.C. § 3664(e)." *Id.* (citation omitted). "[T]he government must provide the district court with more than just . . . general invoices . . . ostensibly identifying the amount of their losses." *United States v. Brock-Davis,* 504 F.3d 991, 1002 (9th Cir. 2007) (quoting *United States v. Menza,* 137 F.3d 533, 539 (7th Cir. 1998)).

**[4]** In denying Andrews's request to present his expert witness, the district court engaged in the following colloquy with his counsel:

> THE COURT: So tell me how I am going to be helped by Doctor Mays' testimony today?

> MR. FISCHER: Only that —

> THE COURT: See, it is not enough for Doctor Mays to tell me I don't think they got it right at CVCP. CVCP made their determinations and they paid the money. End of story as far as I am concerned.

> . . . .

> MR. FISCHER: So I am asking simply of Doctor Mays if the disability that was paid out — or his diagnosis of disability, he being disabled, was a direct result of the head injury or it could have been from another source.

> THE COURT: Counsel, the reason that I hesitate here is that my limited understanding of the Crime Victims Compensation Program is they are not going to pay a nickel unless they are satisfied based on the examinations of various treatment providers that the initial criminal incident caused the condition for which application sought benefits, and since they made that determination that both on the treating

physicians and on the evaluations, are you attempting to go behind those evaluations to say they got it wrong?

MR. FISCHER: Yes.

THE COURT: I don't know how you can do that. They did it, they paid it, end of sorry [sic].

. . . .

MR. FISCHER: Well, Your Honor, I would — I would simply ask Doctor Mays if there was another explanation for the disability that was determined by CVCP.

. . . .

THE COURT: Mr. Bershaw is like everybody else. He comes with a whole set of complete psychosocial history, and that individual is — then suffers a skull fracture which imposes on what he already is.

The severe injury — severe physical injury and whatever reasonable consequences flow from that psychologically and physically, and that is within the authority of the CVCP to determine based on expert evaluations that they relied on so I don't know how we get any further on this.

These comments demonstrate that the district court apparently found that Andrews's conduct was the sole cause of Bershaw's mental and physical condition without considering contrary evidence proffered by Andrews. The district court's finding violated the court's duty to resolve any dispute concerning the cause of Bershaw's ailments by a preponderance of the evidence. *Waknine,* 543 F.3d at 556 (citation omitted).

Thus, the district court abused its discretion in rejecting the expert witness's testimony.

**[5]** Upon remand, the district court should permit Andrews to present any evidence indicating that his criminal conduct did not cause Bershaw's mental and physical condition. Because the amount of restitution may be affected by the district court's findings on the cause of the victim's medical expenses and his inability to work, the district court should order that the victim be provided with notice of the restitution hearing. The district court must determine that restitution for medical expenses is supported by reliable evidence and provide an adequate explanation as to how it determined the restitution award. The district court may only award restitution for medical expenses and loss of income if the Government demonstrates that all costs incurred were proximately caused by Andrews's criminal conduct.

**VACATED and REMANDED with instructions.**

---

CLIFTON, Circuit Judge, joined by Judge Fernandez:

We join Judge Alarcón's opinion for the court. We also conclude it was proper for the district court to order as part of the restitution award that payment for the victim's lost income be made directly to the third party that had reimbursed the victim for that loss, in this case Washington's Crime Victim's Compensation Program (CVCP), rather than to the actual victim of the crime.

"We review de novo the legality of a restitution order and, if the order is within the statutory bounds, we review the amount of restitution for abuse of discretion." *United States v. Peterson*, 538 F.3d 1064, 1074 (9th Cir. 2008). Factual findings supporting a restitution order are reviewed for clear

error. *United States v. Berger*, 473 F.3d 1080, 1104 (9th Cir. 2007).

"Court cannot order restitution without statutory authorization." *United States v. Brock-Davis*, 504 F.3d 991, 996 (9th Cir. 2007). Such restitution statutes include the Victim and Witness Protection Act of 1982 ("VWPA"), which authorizes a discretionary payment for certain offenses, 18 U.S.C. § 3663, and the Mandatory Victims Restitution Act of 1996 ("MVRA"), which authorizes mandatory payment for crimes of violence and property offenses, 18 U.S.C. § 3663A. "[T]he [VWPA and the MVRA] are identical in all important respects, and courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent." *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).

Congress explicitly authorized direct payment to a third party such as CVCP in 18 U.S.C. § 3664(j)(1):

> If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

The victim here received compensation from CVCP with respect to his lost income. Under this statute, it is appropriate to order that restitution be paid directly to CVCP. The only limitation under the statute is that the victim has to be fully paid before the third party, CVCP, can be paid.

Defendant Michael Andrews argues and the dissenting opinion by Judge Alarcón agrees that this statute should be disregarded based upon the language used in 18 U.S.C. § 3663A(b)(2):

(A) pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(B) pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

(C) reimburse the victim for income lost by such victim as a result of such offense.

It is contended in particular that subsection (C), which concerns lost income, provides that it is "the victim" who is to be "reimburse[d]," in contrast to subsections (A) and (B), concerning the costs of health care and therapy, which do not specify to whom the payment should be made.

But there is no reason to read that language in such a way as to infer that Congress intended to repeal the more specific direction contained in § 3664(j)(1) on the subject of to whom the restitution payments may be made. If Congress intended to repeal § 3664(j)(1), it presumably would have done so. To the contrary, it is a "longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous." *Beck v. Prupis*, 529 U.S. 494, 506 (2000). Section 3664(j)(1) is still a part of the statutes and should not be disregarded.

The dissenting opinion does not dispute that under Washington law, CVCP is entitled to receive the money it already paid the victim, Scott Bershaw, back from him, if and when he is reimbursed by defendant Andrews. As the district court observed, "[r]eimbursing the CVCP directly avoids the unnec-

essary procedural hurdle of reimbursing Mr. Bershaw, only to have the CVCP then seek reimbursement from Mr. Bershaw." Andrews should not benefit at all by requiring that the restitution payment be made to the victim instead of CVCP, for he would properly still have to pay a total amount of restitution in the same amount. If that were the case, the amount to be paid directly to the victim would simply be larger, and the victim would be expected to pay the additional amount back to CVCP. Nobody would benefit from requiring that the funds be routed in that circuitous manner. Instead, requiring payment to be made directly to the victim would require additional effort from the victim, the district court, and CVCP to make the system work properly. We conclude that the statutes should not be interpreted to require such inefficiency.

None of the cases cited in the dissenting opinion or by Andrews support a different result in this case. In particular, none of those decisions held that § 3664(j)(1) was superseded by § 3663A(b)(2), or that payment of restitution properly owing under the restitution statute could not be paid directly to a third party that had already reimbursed the actual victim.

In *United States v. Dayea*, 73 F.3d 229 (9th Cir. 1995), after a police officer was killed by a drunken driver, his widow sought reimbursement for the loss of her husband's income and also for her own increased insurance costs. Though she would qualify as an injured plaintiff in a wrongful death action, we held that she did not qualify as a "victim" in this context because she did not personally suffer bodily injury, as was required by the applicable restitution statute, the Victim and Witness Protection Act, 18 U.S.C. § 3663.[1] *Id.* at 230-31. In contrast, the restitution ordered in our case covers the amount of income lost by the identified victim on account of his injuries, a proper item for reimbursement.

---

[1]The statute applied in this case to determine the amount of restitution to be paid, the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, was subsequently enacted.

In *United States v. Follet,* 269 F.3d 996 (9th Cir. 2001), we reversed a restitution order that required a defendant convicted of sexual abuse of a minor to pay a government-funded facility for the cost of psychological counseling provided to the young girl who was the victim of the abuse. The facility was located on an Indian reservation and provided its services to eligible clients, including the victim, at no cost to them. Our decision was based on the specific language of the different restitution statute involved there, 18 U.S.C. § 2248(b)(3). It "provides specifically that only 'any costs *incurred by the victim*' are subject to restitution orders." *Id.* at 1000 (emphasis in original). The victim did not incur any costs for the counseling, and we held that the applicable statute did not authorize restitution for costs she did not incur, including costs borne by the facility. Our decision noted that other restitution provisions used different language and appeared to permit payment to third parties, however. *Id.* at 1000-01. As already noted, there is no doubt in our case that Bershaw's lost income is a proper subject for restitution.

*United States v. Cliatt,* 338 F.3d 1089 (9th Cir. 2003), addressed the situation suggested but not dealt with in *Follet*, that being a restitution order directing that restitution payment be made directly to a government facility that provided health care to the victim without charging the victim. The victim in *Cliatt* was an active-duty member of the United States Army, and she was treated in a military hospital for bodily injuries suffered when she was attacked by the defendant, who was convicted of voluntary attempted manslaughter. We concluded that the military hospital was entitled to restitution for the cost of the victim's case, whether or not the hospital itself was a "victim," because the language of section 3663A(b)(2)(A) & (B), quoted above, provided that restitution must cover "what it costs to care for the victim, whether or not the victim paid for the care or was obligated to do so," and without specifying to whom the payment could be made. *Id.* at 1091. The defendant in that case argued that § 3664(j)(1) — the statute relied on by us and by the district

court to support its order requiring Andrews to pay CVCP directly — should be read to narrow the provisions of § 3663A. Specifically, defendant Cliatt argued that the reference in § 3664(j)(1) to "a victim [who] has received compensation from insurance or any other source with respect to a loss" meant that the military hospital was not entitled to restitution because the victim did not suffer a "loss," as she was provided treatment without charge. *Id.* at 1092. We rejected that argument and affirmed the order that the military hospital be paid restitution.

It was in that context that *Cliatt* used the language quoted in the dissenting opinion, at 5300-01, that § 3664 does not "set[ ] substantive standards for an award of restitution," and that "the third-party restitution provisions of § 3664 . . . cannot trump the substantive restitution provisions found elsewhere in the statutes, because § 3664 is only a procedural mechanism." *Cliatt,* 338 F.3d at 1093 (citing *Follet,* 269 F.3d at 1000). That language affirmatively supports our conclusion that the district court may order that restitution be paid directly to CVCP. We apply § 3663A, "the substantive restitution provision," to determine the substance — what payments qualify for restitution. In this case that includes the income lost by the victim as a result of his bodily injuries. Then we apply the "procedural mechanism," § 3664(j)(1), to authorize the procedure, in this case, ordering payment directly to CVCP as a third party that already reimbursed the victim for that lost income. "Procedure" is all we are talking about here. The dissenting opinion obviously agrees that the victim is entitled to restitution for his lost income and that CVCP should wind up with the money by getting back from the victim what it already paid him. There is no other reason for it to make the observation that it does in footnote 5. Thus, there is simply no "substantive" collision here with any other statute.

The decisions from other courts of appeals relied upon by the dissenting opinion do not support a different result, either.

In *United States v. Wilcox*, 487 F.3d 1163 (8th Cir. 2007), the requested restitution was denied because the compensation sought was for the lost income of a person other than the "victim" of the crime. Defendant was convicted of sexual abuse of a minor. Reimbursement was sought for the lost income of the victim's mother based upon time she took off from work to care for her child. The Eighth Circuit concluded that only the child was a "victim" under the statute, so only the child's lost income could be the subject of the restitution order. *Id.* at 1176-77. In this case, however, the money at issue is compensation for income lost by the victim, Bershaw, due to bodily injuries he suffered from defendant's criminal conduct. Payment for the victim's lost income is squarely authorized by the restitution statute.

The decision of the Seventh Circuit in *United States v. Pawlinski,* 374 F.3d 536 (7th Cir. 2004), requires careful reading because the proposed recipient denied restitution by the court of appeals was "the Crime Victims Fund," which makes it sound more like our case than it really is. That proposed recipient suffered no loss as a result of the crime and, unlike CVCP in our case, had not reimbursed the actual victim for any loss. Pawlinski was a Milwaukee alderman who pleaded guilty to mail fraud for having defrauded contributors to his campaign fund. He was ordered to pay restitution of $39,324.03, which he did by depositing it with the district court. The court then notified contributors that they might be entitled to reimbursement, but only a few stepped forward, and their claims amounted to only $1,850. The question became what to do with the balance. The district court amended the order of restitution to direct that the money be paid to the Crime Victims Fund of the U.S. Treasury. 42 U.S.C. § 10601(a). The Seventh Circuit reversed that order, because the Crime Victims Fund was not a victim of the crime. *Id.* at 539. There was no discussion in the opinion of § 3664(j)(1) as a basis for permitting restitution to be paid to the Fund, for the Fund had not reimbursed any actual victims of Pawlinski's crime and did not qualify under that provision.

Nothing in *Pawlinski* justifies denying the district court in our case the authority to order that payment be made by Andrews to the CVCP under § 3664(j)(1), because the CVCP did reimburse the victim in our case for his loss.

The recent decision of the Tenth Circuit in *United States v. Speakman*, 594 F.3d 1165 (10th Cir. 2010), was essentially the same as *Pawlinski*. The defendant in *Speakman* was a stockbroker with Merrill Lynch. Without authorization, he withdrew substantial assets from an account belonging to his wife. He was convicted of wire fraud and was ordered by the district court to pay restitution, including $194,205.77 to be paid to the same federal Crime Victims Fund. That amount was the loss suffered by the victim, Mrs. Speakman, after subtracting what she had already recovered. Mrs. Speakman expressly declined further restitution from the defendant, stating that she did not want to deal with him or be subject to his emotional abuse, so the district court ordered that payment of that amount be made to the Crime Victims Fund instead. That was not because the Fund had paid that amount to Mrs. Speakman — it had not — but because the district court felt compelled under the statute to order the defendant to pay restitution for the loss, and it identified the Fund as an appropriate substitute recipient. *Id.* at 1169. Though the statute authorized a victim to assign her interest in restitution payments to the Fund, 18 U.S.C. § 3664(g)(2), Mrs. Speakman did not do so. *Id.* at 1174-75. Citing *Pawlinski*, the Tenth Circuit reversed the restitution order because the restitution statute did not authorize payment to the Fund. As in *Pawlinski*, the court in *Speakman* did not consider or discuss § 3664(j)(1) as a basis for permitting the restitution to be paid to the Fund directly, because that provision did not apply. The Fund had not paid Mrs. Speakman for her loss. *Speakman* does not conflict with our decision here.

As the district court stated, "had Mr. Bershaw been able to afford missing work without seeking alternative funds to help make ends meet, Defendant would be required to reimburse

Mr. Bershaw under § 3663A(b)(2)(C) for lost income because Mr. Bershaw is the victim." It is the income lost by Mr. Bershaw that is, properly, the subject of this restitution order. It was appropriate, therefore, for the district court to order that payment of that amount be made directly to CVCP, as expressly authorized in § 3664(j)(1). If, on remand, the district court finds that Bershaw lost income as a result of the criminal offense by Andrews, it will be appropriate for the restitution order to provide for payment directly to CVCP, as long as the order provides that all restitution owing to Bershaw directly be paid to him before any restitution is paid to CVCP.

ALARCÓN, Senior Circuit Judge, dissenting in part:

I disagree with the my colleagues' conclusion that restitution to the CVCP is appropriate here. I would hold that a restitution award for lost income must be paid to the victim of the crime, not to a third party, pursuant to 18 U.S.C. § 3663A(b)(2)(C).

"A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. Factual findings supporting an order of restitution are reviewed for clear error. The legality of an order of restitution is reviewed de novo." *United States v. Gordon,* 393 F.3d 1044, 1051 (9th Cir. 2004) (quoting *United States v. Stoddard,* 150 F.3d 1140, 1147 (9th Cir. 1998)).

"Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority." *United States v. Follet,* 269 F.3d 996, 998 (9th Cir. 2001) (citing *United States v. Hicks,* 997 F.2d 594, 600 (9th Cir. 1993)). "The courts have such authority under the Victim and Witness Protection Act of 1982 ("VWPA"), providing for discretionary awards of restitution after conviction for certain crimes,

18 U.S.C. § 3663, and under the Mandatory Victims Restitution Act of 1996 ("MVRA"), providing for mandatory restitution for crimes of violence and property offenses, 18 U.S.C. § 3663A."[1] *Id.*

" '[T]he starting point for interpreting a statute is the language of the statute itself.' " *United States v. Hackett,* 311 F.3d 989, 991-92 (9th Cir. 2002) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980)). "Absent congressional direction to the contrary, words in statutes are to be construed according to 'their ordinary, contemporary, common meaning[s]' " *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 388 (1993)).

Section 3663A(a)(1) and (2) provide as follows:

> **(a)(1)** Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the *victim of the offense* or, if the victim is deceased, to the victim's estate.
>
> **(2)** For the purposes of this section, *the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered* including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, *any person directly harmed by the defendant's crimi-*

---

[1]18 U.S.C. § 3663(b)(2), or the VWPA, and 18 U.S.C. § 3663A(b)(2), or the MVRA, are nearly identical and "courts interpreting the MVRA may look to and rely on cases interpreting the VWPA as precedent." *Gordon,* 393 F.3d at 1048.

*nal conduct* in the course of the scheme, conspiracy, or pattern. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 3663A(a)(1)-(2). (emphasis added).

Section 3663A(b)(2) provides that in the case of an offense resulting in bodily injury to a victim the restitution order shall require that defendant:

**(A)** pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

**(B)** pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

**(C)** reimburse the victim for income lost by such victim as a result of such offense.

18 U.S.C. § 3663A(b)(2)(A)-(C).

Section 3663A(b)(2)(A) and (B) does not specify that restitution must be made to the victim. In Section 3663A(b)(2)(C), however, Congress has expressly provided that the defendant shall "reimburse *the victim* for income lost by such victim as

a result of such offense." 18 U.S.C. § 3663A(b)(2)(C) (emphasis added).

In *United States v. Dayea*, 73 F.3d 229 (9th Cir. 1995), this Court held that:

> Section 3663(b)(2) limits its own applicability to cases in which the offense caused a bodily injury to "a victim." In such cases, a court may order the defendant to "reimburse *the* victim for income lost by such victim as a result of such offense." Section 3663(b)(2)(C). This use of the phrase "the victim" (as opposed, for instance, to "any victim") indicates that "the victim" of § 3663(b)(2)(C) must refer to the same "victim" as the first clause of § 3663(b)(2).

*Id.* at 231.

As this court previously observed: "[W]ith respect to restitution for wages, Congress required the victim himself or herself to show actual losses. There Congress chose the verb 'reimburse,' rather than 'pay,' and specified that it was the victim who had to have 'lost' the income." *United States v. Cliatt,* 338 F.3d 1089, 1091 (9th Cir. 2003) (citing 18 U.S.C. § 3663A(b)(2)(C)). "We must give effect to these distinctions." *Id.* "When Congress includes a provision in one part of a statute but excludes it in another, we deem the difference intentional and assign meaning to the omission." *Id.* (quoting *Solomon v. Interior Reg'l Hous. Auth.,* 313 F.3d 1194, 1199 (9th Cir. 2002)).

In *United States v. Wilcox,* 487 F.3d 1163 (8th Cir. 2007), the Eighth Circuit also interpreted § 3663A(b)(2)(C) to require that restitution for lost income be awarded to the victim who was directly harmed by the defendant. *Id.* at 1176. The Eighth Circuit reasoned as follows:

> While the statute defines "victim" as "a person directly and proximately harmed as a result of the

commission of an offense for which restitution may be ordered," [ ] § 3663A(a)(2), the subsection concerning reimbursement for lost income refers to a specific victim: "[I]n the case of an offense resulting in bodily injury *to a victim* . . . [the defendant shall] reimburse *the victim* for income lost *by such victim* as a result of such offense." 18 U.S.C. § 3663A(b)(2)(C) (emphasis added).

*Id.*

The district court stated that "prohibiting the CVCP from recovering the monies it paid [ ] Bershaw for his lost income would eliminate § 3664(j)(1)'s utility[.]"[2] The district court's reliance on § 3664(j)(1) to require a court to order restitution for lost wages to a third party that advanced money to the victim harmed by the defendant is contrary to this Circuit's decisions in *Cliatt* and *Follet.* In *Cliatt,* this Court held that § 3664 does not "set[ ] substantive standards for an award of restitution." *Cliatt,* 338 F.3d at 1093. " '[T]he third-party restitution provisions of § 3664 . . . cannot trump' the substantive restitution provisions found elsewhere in the statutes, because § 3664 is only a procedural mechanism." *Id.* (citing *Follet,* 269 F.3d at 1000). In *Follet,* we held that "§ 3664 establishes the procedures for ordering restitution, but [ ] that section does *not* 'fix [ ] the substantive boundaries of [restitution] orders.' " *Follet,* 269 F.3d at 1000 (quoting *Hughey v. United States,* 495 U.S. 411, 418 (1990)). "As a consequence, the

---

[2]Section 3664(j)(1) provides as follows:

[I]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

18 U.S.C. § 3664(j)(1) (emphasis added).

third-party restitution provisions of § 3664, even if they could otherwise be read somewhat metaphorically to cover 'compensation' to victims in the form of direct services, cannot trump any substantive limitations contained" in the restitution statutes. *Id.*[3]

In a recent decision, the Tenth Circuit held the plain language of the MVRA requires that a district court award restitution to the person directly and proximately harmed by a defendant's crime, instead of to the Crime Victims Fund, even if the victim has renounced her right to receive restitution. *United States v. Speakman,* 594 F.3d 1165, 1174-77 (10th Cir. 2010). The Tenth Circuit held "[f]ederal courts possess no inherent authority to order restitution, and may only do so as explicitly empowered by statute." *Id.* at 1175 (citing *United States v. Nichols,* 169 F.3d 1255, 1278 (10th Cir. 1999) and quoting *United States v. Hensley,* 91 F.3d 274, 276 (1st Cir. 1996)) (internal quotations omitted). Citing 18 U.S.C.

---

[3]Under Washington law, a victim injured as a result of criminal conduct must reimburse a third party which has paid benefits to a victim pursuant to Wash. Rev. Code § 7.68.120. Section 7.68.120 provides as follows:

> Any person who has committed a criminal act which resulted in injury compensated under this chapter may be required to make reimbursement to the [CVCP] as provided in this section.

> (1) Any payment of benefits to or on behalf of a victim under this chapter creates a debt owing to the department by any person found to have committed the criminal act in either a civil or criminal court proceeding in which he or she is a party. . . . If, in a criminal proceeding, a person has been found to have committed the criminal act that results in the payment of benefits to a victim and the court in the criminal proceeding does not enter a restitution order, the department shall, within one year of imposition of the sentence, petition the court for entry of a restitution order.

Wash. Rev. Code § 7.68.120. The record also shows that Bershaw signed an agreement to reimburse CVCP for any of the amount of lost income he might receive from the person that caused his injury. Clearly, to comply with Wash. Rev. Code § 7.68.120, CVCP should be given notice of pending restitution proceedings if it has paid benefits to a crime victim.

§ 3663A(a)(1), it concluded that "restitution is only mandatory when ordered to the victim or the victim's estate[.]" *Id.* In reversing the district court's restitution order, the Tenth Circuit held that there was "no statutory basis on which a court could have ordered [the defendant] to pay restitution to the Crime Victims Fund." *Id.* at 1179.

The Seventh Circuit reached a similar result in *United States v. Pawlinski,* 374 F.3d 536 (7th Cir. 2004). In *Pawlinski,* the district court ordered a defendant, who defrauded campaign contributors, to pay restitution to his victims and deposit the sum owed in the district court. *Id.* at 537. The district court then notified the defrauded victims that they were entitled to reimbursement. *Id.* However, some contributors did not collect the amount of their loss. *Id.* Thus, the district court ordered the unclaimed funds to be paid to the Crime Victims Fund. *Id.* The defendant appealed from the order that the unclaimed balance be awarded to the Crime Victims Fund. *Id.* at 538. In reversing the restitution order, the Seventh Circuit held that "[a]n order of restitution under [the MVRA] . . . must go to victims of the defendant's crimes, and the Crime Victims Fund is neither a victim of *Pawlinski* nor a representative of his victims." *Id.* at 539.

As in *Speakman* and *Pawlinski,* the district court in the matter sub judice erroneously ordered the defendant to pay restitution to someone other than to the person directly and proximately harmed as a result of the commission of an offense for which restitution may be awarded.

The district court's decision to require Andrews to reimburse the CVCP directly for the amount it ordered in favor of the victim, has a common sense appeal. Unfortunately, however, the district court not only lacked the power to do so, it also violated Congress's express and unambiguous mandate that the defendant shall "reimburse the victim for income lost by such victim." 18 U.S.C. § 3663A(b)(2)(C). Where, as here, the language used by Congress is clear and unambiguous, a

federal court lacks the power to disregard it. If a statute drafted by Congress unwisely prevents a third party from being duly reimbursed for money it advanced to the victim of a crime in a restitution order, the resolution of any perceived flaw or anomaly in the statute must be presented to Congress, not to the judicial branch of government. Under the Constitution, the judicial branch's role is limited to interpreting the law, not making it.

In *Tennessee Valley Authority v. Hill,* 437 U.S. 153 (1978), the Supreme Court explained that, in engaging in statutory interpretation,

> [o]ur individual appraisal of the wisdom or unwisdom of a particular course consciously selected by Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power to veto. . . . We agree with the Court of Appeals that in our constitutional system the commitment to the separation of powers is too fundamental for us to pre-empt congressional action by judicially decreeing what accords with 'common sense and the public weal.' Our Constitution vests such responsibilities in the political branches.

*Id.* at 194-95.

Accordingly, I am persuaded that it is our duty to apply § 3663A(b)(2)(C) and hold that the district court lacked the authority to award restitution to the CVCP because that entity did not suffer bodily injury as the result of Andrews' violent assault.